UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ROBINSON and
RESHELLE ROBINSON,

        Plaintiffs,

                              CASE NO. 2:08-CV-13048
                              JUDGE GERALD E. ROSEN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

WELLS FARGO BANK, N.A. and
FIRST FRANKLIN MORTGAGE LOAN
TRUST 2003-FFH2,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
### (Doc. Ent. 14)

### *Table of Contents*

I.      **OPINION** ................................................................ **2**
    A.    **Background** .................................................... **2**
    B.    **Plaintiffs' Motion for Leave to File a First Amended Complaint** ....................... **2**
    C.    **Fed. R. Civ. P. 15 ("Amended and Supplemental Pleadings")** ......................... **4**
    D.    **Plaintiffs' Proposed Amended Complaint Suffers from Some Deficiencies.** .............. **6**
        1.    **Plaintiffs' proposed amended complaint adds defendant Orlans, FDCPA claims and state law claims.** ...................................................... **7**
        2.    **Proposed defendant Orlans's identity is unclear.** ........................... **9**
        3.    **Plaintiffs' Fair Debt Collection Practices Act (FDCPA) claim(s) and Truth in Lending Act (TILA) claim are deficient as set forth in the proposed amended complaint.** ...................................................... **9**
        4.    **Plaintiffs may amend their complaint to bring claims based upon common law fraud and/or the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968); however, they must do so with more specificity.** ...................... **15**
        5.    **Plaintiffs' Uniform Commercial Code and Uniform Securities Act claims must be pleaded with more specificity.** ......................................... **20**
        6.    **Plaintiffs may amend their complaint to properly plead claims pursuant to Mich. Comp. Laws §§ 600.3216, 600.3232.** ...................................... **21**
    E.    **Under Fed. R. Civ. P. 15(a)(2), I conclude that justice requires that plaintiffs be given the opportunity to file a first amended complaint.** .................................... **23**

II.     **ORDER** .................................................................. **25**

I.      OPINION

A.      Background

On or about August 21, 2003, James Robinson and Reshelle Robinson "entered into a mortgage contract with First Franklin[.]" Doc. Ent. 1 at 2 ¶ 9; Doc. Ent. 14 at 13 ¶ 11; Doc. Ent. 19 at 8.[1]  Several years later, on December 31, 2007, an assignment was granted from First Franklin Financial Corporation to Wells Fargo Bank Tru., First Franklin Mortgage Loan Trust and Saxon Mortgage Services Inc. Atty.  *See* www.waynecountylandrecords.com/realestate; Doc. Ent. 14 at 13 ¶ 11.  On January 30, 2008, a sheriff's deed was executed as to the property located at 14675 Rutherford, Detroit, Michigan.  Consideration was in the amount of $76,415.00. *See* www.waynecountylandrecords.com/realestate.

On July 15, 2008, James Robinson and Reshelle Robinson filed the instant lawsuit regarding a mortgage on the above-described property.  Defendants are Wells Fargo Bank National Assn Tru., and First Franklin Mortgage Loan Trust - grantees of the Sheriff's Deed. Doc. Ent. 1 at 1-2 ¶¶ 4-6; www.waynecountylandrecords.com/realestate.  On August 27, 2008, defendants Wells Fargo and First Franklin filed their answer and affirmative defenses.  Doc. Ent. 6.  Plaintiffs then filed responses to defendant Wells Fargo Bank's affirmative defenses.  Doc. Ent. 9.

Judge Rosen has referred this case to me to conduct all pretrial matters.  Doc. Ent. 2.  On November 24, 2008, defendant Wells Fargo filed a proposed Fed. R. Civ. P. 26(f) report.  Doc. Ent. 13.

B.      Plaintiffs' Motion for Leave to File a First Amended Complaint

---

[1]It appears that on September 4, 2003, Citicorp Trust Bank granted James and Reshelle Robinson a discharge on the mortgage for the property located at 12675 Rutherford, Detroit, Michigan.  *See* www.waynecountylandrecords.com/realestate.

Currently pending before the Court are **(1)** defendant Wells Fargo Bank's October 16, 2008 motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. Ent. 10), to which a response was due on November 24, 2008 (Doc. Ent. 12)[2] and regarding which a response was filed on January 15 (Doc. Ent. 19)[3] and a reply was filed on January 26, 2009 (Doc. Ent. 20);[4] **(2)** plaintiffs' November 24, 2008 motion for leave to file first amended complaint (Doc. Ent. 14),[5] to which defendant Wells Fargo responded on December 16, 2008 (Doc. Ent. 18);[6] and **(3)** Wells Fargo's February 13, 2009 motion for protective order under Fed. R. Civ. P. 26(c) (Doc. Ent. 21).

Defendant Wells Fargo's Rule 12(b)(6) motion to dismiss raises the single issue that plaintiffs' complaint against it should be dismissed because the complaint does not state an actionable claim against Wells Fargo. Doc. Ent. 10 at 4. In support of this argument, defendant alleges that "[p]laintiffs have not identified a single actionable act or omission by Wells Fargo in connection with this matter[,]" and "[a]ny alleged claim against Wells Fargo under the

---

[2]According to defendant Wells Fargo, the due date was extended to December 31, 2008 at the December 1, 2008 scheduling conference. Doc. Ent. 20 at 2, Doc. Ent. 21 at 8.

[3]In this response, plaintiffs argue that (1) "[n]on-lawyer pro se litigants are not to be held to same standards as a practicing lawyer[;]" (2) based upon ¶¶ 13 and 14 of the proposed amended complaint, "Wells Fargo Bank is not the holder in due course of the promissory note[,]" and (3) "Plaintiffs have successfully pled a cause of action under RICO[.]"

[4]In this reply, defendant Wells Fargo argues that (I) "[t]he [original] complaint does not contain any actionable allegations against Wells Fargo[,]" (II) "Plaintiffs' proposed amended complaint would not cure any of the pleading deficiencies of their original Complaint[,]" and (III) "Plaintiffs' proposed amended complaint would not otherwise state a claim for relief against Wells Fargo."

[5]A scheduling conference was noticed for December 1, 2008. Doc. Ent. 11; Doc. Ent. 15. On that day, I held a scheduling conference.

[6]Wells Fargo originally filed a response on December 15, 2008 (Doc. Ent. 16); however, it was stricken the following day (Doc. Ent. 17).

Racketeer Influenced and Corrupt Organizations Act ("RICO") must be dismissed."  Doc. Ent. 10 at  9-10, 10-12.

Before responding to defendant Wells Fargo's dispositive motion, plaintiffs filed a motion for leave to file a first amended complaint.  Plaintiffs seek to file a first amended complaint "to amend their Complaint to provide clarity and thoroughness[,]" and because they "have discovered additional information which further supports allegations in their original complaint regarding 15 [U.S.C. § 1692g(a)(3)], the Fair Debt Collection Practices Act [15 U.S.C. §§ 1692-1692p] and the Truth in Lending Act [15 U.S.C. §§ 1601-1667f]."  Doc. Ent. 14 at 3.[7]  Defendant Wells Fargo's response argues that the Court should deny plaintiffs' motion for leave to amend and should grant Wells Fargo's pending dispositive motion.  Doc. Ent. 18.

The latest motion pending before the Court is Wells Fargo's February 13, 2009 motion for protective order under Fed. R. Civ. P. 26(c).  Doc. Ent. 21.  It appears that plaintiffs served several discovery requests on or about January 13, 2009.  Doc. Ent. 21 at 9, Doc. Entries 21-3 (Req. Nos. 1-5, Interrogatory Nos. 1-18), 21-4 (Interrogatory Nos. 1-22), 21-5 (Req. Nos. 1-31). Defendant Wells Fargo seeks entry of a Fed. R. Civ. P. 26(c) protective order "requiring that Wells Fargo need not provide responses to [plaintiffs'] discovery requests until (I) after the Court rules on Wells Fargo's motion and (ii) after the Court has entered a scheduling order under Rule 16(b), if necessary[.]" Doc. Ent. 21 at 3.[8]

**C.     Fed. R. Civ. P. 15 ("Amended and Supplemental Pleadings")**

---

[7]A copy of plaintiffs' proposed first amended complaint is attached to plaintiffs' motion to amend.  Doc. Ent. 14 at 11-15.

[8]Wells Fargo has provided a proposed order granting this motion.  Doc. Ent. 21-6.

4

Federal Rule of Civil Procedure 15 sets forth rules regarding amended and supplemental pleadings.  In pertinent part, the rule states:

**(a) Amendments Before Trial.**

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course:

(A) before being served with a responsive pleading; or

(B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

**(3) Time to Respond.** Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 10 days after service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a).  "'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'"  *Foman v. Davis*, 371 U.S. 178, 181-182 (1962), quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

While "...the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers..." *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "[leave to amend] is by no means automatic.'"  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993), quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing

5

party, and futility of amendment are all factors which may affect the decision." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973), citing *Foman*, 371 U.S. at 182 (1962); accord *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). "[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971), citing *Foman*, 371 U.S. 178 (1962) (dictum). However, the trial court must take into consideration any prejudice to the opposing party. *Zenith Radio Corp.*, 401 U.S. at 330-331; 3 *Moore's Federal Practice*, § 15.14[1] at n.4 (Matthew Bender 3d ed.).

Aside from the factors elicited in the *Foman* and *Zenith* decisions, courts may evaluate the legal sufficiency of the proposed amended claim in deciding whether to grant leave to amend. 3 Moore's Federal Practice, § 15.15[1]-[3] (Matthew Bender 3d ed.). "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992). "Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." *Id*.

**D.**    **Plaintiffs' Proposed Amended Complaint Suffers from Some Deficiencies.**

Defendant Wells Fargo has described itself as "the current holder of the promissory note secured by Plaintiff's residential mortgage and, in light of Plaintiffs' default(s), [Wells Fargo] initiated foreclosure proceedings with respect [to] Plaintiffs' residence." It is defendant Wells Fargo's position that plaintiffs' original complaint does not "make any allegations sufficient to support any claim against Wells Fargo[,]" and that "[n]owhere in their [original] Complaint do Plaintiffs cite a single specific act or omission allegedly perpetrated by Wells Fargo." Doc. Ent.

6

10 at 7-8.  Defendant Wells Fargo contends that "all of the material allegations in Plaintiffs'

[original] Complaint relate only to the origination of the mortgage loan at issue[,]" and

"Plaintiffs do not allege that Wells Fargo, who is merely the current note holder, was involved in

any way with the origination of the mortgage loan."  Doc. Ent. 10 at 9.

1.    **Plaintiffs' proposed amended complaint adds defendant Orlans, FDCPA claims and state law claims.**

Plaintiffs' original complaint names two defendants:  First Franklin Loan and Wells

Fargo Bank National Association Trust.  Doc. Ent. 1 at 1-2 ¶¶ 4-6.[9]  The lawsuit is brought

pursuant to 18 U.S.C. §§ 1961-1968 (the Racketeer Influenced and Corrupt Organizations Act

(RICO)).  Doc. Ent. 1 ¶ 1.  It contains a single count, within which are mentioned Uniform

Commercial Code §§ 8-501 and 3-311(d).  Doc. Ent. 1 at 2 ¶ 10, 3 ¶ 14.  Substantively,

defendant Wells Fargo is only mentioned as follows:

> Wells Fargo is not entitled to foreclose upon the Plaintiff's property as they do
> not have a bona fide legal interest in the subject property.  The Contract between
> Franklin and the Plaintiff is void on its face; therefore[,] Wells Fargo cannot act
> on a void contract.
> . . .
> Wells Fargo is a party to the ongoing corrupt enterprises and schemes of Franklin
> in order to obtain by Fraud property of the Plaintiffs.

Doc. Ent. 1 at 3 ¶¶ 18, 21.  Ultimately, plaintiffs request that the Court find "in favor of the

Plaintiff against each Defendant for violation of [the Racketeer Influenced and Corrupt

Organizations Act (RICO)] [18 U.S.C. §§ 1961-1968][,] and award treble damages, per statute

and punitive damages[,] . . . exclusive of costs and court fees."  Doc. Ent. 1 at 3.

---

[9]Plaintiff's original complaint actually lists three defendants: First Franklin Loan, Wells Fargo Bank and National Association Trust.  Doc. Ent. 1 ¶¶ 4-6.  Based upon the Wayne County Register of Deeds information, "Wells Fargo Bank National Assn Tru" was a grantee of the January 30, 2008 sheriff's deed.  *See* www.waynecountylandrecords.com/realestate.

In its motion to dismiss, Wells Fargo asserts that the original complaint "does not identify a single actionable act or omission by Wells Fargo in connection with this matter." Doc. Ent. 10 at 1 ¶ 4. In their motion to amend, plaintiffs argue that "[they] are entitled to file and the Court should grant their Motion for Leave to File Amended Complaint[,]" "[d]efendants will not be prejudiced in the event this motion is granted[,]" and "plaintiffs will be prejudiced if their motion is denied due to the fact that they discovered additional facts concerning their lawsuit after their original complaint was filed." Doc. Ent. 14 at 8-9. Plaintiffs argue that they should be allowed to file their proposed amended complaint, because they "have merit to bring this lawsuit under TILA, the [Michigan] Uniform Securities Act [Mich. Comp. Laws §§ 451.501 - 451.813], and the Fair Debt Collections Practices Act." Doc. Ent. 14 at 9.

By comparison to the original complaint, plaintiffs' proposed amended complaint names three defendants: First Franklin Mortgage Loan; Wells Fargo Bank; and Orlans, who is defined as "the debt collector in this action[.]" Doc. Ent. 14 at 12 ¶¶ 7-9. The proposed amended complaint is also based upon RICO. Doc. Ent. 14 at 12 ¶ 1. It contains two counts. The first count is against defendants First Franklin Mortgage Loan Trust and Wells Fargo Bank and specifically mentions the FDCPA. Doc. Ent. 14 at 13-14 ¶¶ 10-19. The second count is against Orlans and specifically mentions Mich. Comp. Laws § 600.3216, 15 U.S.C. § 1692g and the FDCPA. Doc. Ent. 14 at 14-15 ¶¶ 20-26. Plaintiffs' proposed asserted damages include rescission of the subject loan, damages for misrepresentations and violations of the FDCPA and Mich. Comp. Laws §§ 600.3216 and 600.3232; costs and fees; and relief under Uniform Commercial Code § 3-311(d). Doc. Ent. 14 at 15.

In response to plaintiffs' motion to amend, Wells Fargo argues that the proposed first

8

amended complaint "would do nothing to cure the pleading deficiencies outlined in Wells Fargo's pending Motion to Dismiss and supporting brief[.]" Doc. Ent. 18 at 2.  In response to defendant Wells Fargo's motion to dismiss, plaintiffs state that "[d]uring the foreclosure process, Wells Fargo Bank violated the provisions of the [FDCPA] and RICO[.]" Doc. Ent. 19 at 8. Plaintiffs contend that "[a]fter [the original] complaint was filed, additional information became known to [them][,]" and "Plaintiffs' claims in their First Amended Complaint against Wells Fargo Bank have merit and can survive this Motion to Dismiss[.]" Doc. Ent. 19 at 9.

**2.      Proposed defendant Orlans's identity is unclear.**

On the "Civil Cover Sheet" for this case, defense counsel is listed as Orlans Associates P.C., with an address of P.O. Box 5041, Troy, Michigan 48007, and a phone number of 248-457-1000.  Doc. Ent. 1 at 6.  In the proposed amended complaint, defendant "Orlans" is described as "the debt collector in this action[.]" Doc. Ent. 14 at 12 ¶ 9.  Furthermore, the proposed amended complaint asserts that "Defendant Orlans is acting as the third party debt collector as evidenced in the advertisement foreclosure."  Doc. Ent. 14 at 14 ¶ 21.

In its motion to dismiss, defendant Wells Fargo claims that it "is the current holder of the note on Plaintiffs' residential property," and it "has initiated foreclosure proceedings due to Plaintiffs' default on their mortgage loan obligations."  Doc. Ent. 10 at 7.

Based on the foregoing, the Court can only assume that Orlans Associates represented defendant Wells Fargo in the state court foreclosure action.  Any amended complaint should clarify whether the law firm itself is the intended defendant.

**3.      Plaintiffs' Fair Debt Collection Practices Act (FDCPA) claim(s) and Truth in Lending Act (TILA) claim are deficient as set forth in the proposed amended complaint.**

9

a.      **The Consumer Credit Protection Act (CCPA).**  For the sake of explanation, the CCPA

is codified at 15 U.S.C. §§ 1601-1693r.  The subchapters of the CCPA were recently explained

by the 1ˢᵗ Circuit as follows:  "**Subchapter I of the Consumer Credit Protection Act is the

Truth in Lending Act ("TILA")**, 15 U.S.C. § 1601 et seq. , which imposes disclosure

requirements on creditors. **Subchapter II places restrictions on garnishment of

compensation**, 15 U.S.C. § 1671 et seq. **Subchapter II-A is the Credit Repair Organizations

Act**, 15 U.S.C. § 1679 et seq. , which protects consumers from unfair trade practices by credit

repair organizations. **Subchapter III is the FCRA**, 15 U.S.C. § 1681 et seq. , which primarily

regulates credit reporting agencies but also places requirements on users of credit information

from these agencies. **Subchapter IV is the Equal Credit Opportunity Act**, 15 U.S.C. § 1691 et

seq., which prohibits discrimination in the extension of credit. **Subchapter V is the Fair Debt

Collection Practices Act**, 15 U.S.C. § 1692 et seq. **Subchapter VI is the Electronic Fund

Transfer Act**, 15 U.S.C. § 1693 et seq. , which regulates the participants in electronic fund

transfer systems."  *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1ˢᵗ Cir. 2008)

(emphasis added).

b.      **The Fair Debt Collection Practices Act (FDCPA).**  Plaintiffs' proposed amended

complaint makes specific reference to 15 U.S.C. § 1692g of the FDCPA, as well as to the

FDCPA in general.  15 U.S.C. § 1692g governs the validation of debts.  It provides:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection
with the collection of any debt, a debt collector shall, unless the following
information is contained in the initial communication or the consumer has paid
the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

*(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*

*(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and*

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*(b) Disputed debts*

*If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

(c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

11

(d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section.

(e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986, chapter 94 of this title [15 U.S.C.A. § 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

15 U.S.C. § 1692g (emphasis added).

Plaintiffs' proposed claim against First Franklin and Wells Fargo alleges that Wells

Fargo did not possess the original note,[10] that Wells Fargo is not the holder in due course because

---

[10]In the proposed amended complaint, plaintiffs claim that the submission of copies of the original note to prove nonperformance is not sufficient to establish default.  Doc. Ent. 14 at 13 ¶ 13.  In response to the motion to dismiss, plaintiffs argue that "the alleged creditor or holder in due course must be in actual possession of the original promissory note."  Doc. Ent. 19 at 11. Among the cases plaintiffs cite are *In re Maryville Sav. & Loan Corp.*, 743 F.2d 413, 416 -417 (6th Cir. 1984) (stating that "we conclude that article nine applies to the plaintiff's security interest but only in the promissory notes themselves. Since plaintiff did not take possession of the notes, plaintiff's security interest in the notes was not perfected.  See Tenn.Code Ann. § 47-9-304(1). On the other hand, we conclude that article nine does not apply to plaintiff's security interest in the deeds of trust.") and *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228, 1230 (9th Cir. 1977) ("the California Commercial Code and the U.C.C. require actual possession for perfection of the security interests in this case, the district court erred by finding 'constructive possession' as satisfaction for the perfection requirements.").  *But see In re First T.D. & Inv., Inc.*, 253 F.3d 520, 523 (9th Cir. 2001) (California Business and Professions Code § 10233.2, "under limited circumstances, permits perfection without possession of the security instruments.").

Plaintiffs also argue, citing *Dougherty v. Randall*, 3 Mich. 581, 587 (1855), that "[a] mortgage which has been severed from the corresponding promissory note does not entitle the mortgage holder to collect the indebtedness or to take possession of the real property."  Doc Ent. 19 at 11.

of violations which took place concerning the property sale,[11] and that Wells Fargo and First

Franklin were unjustly enriched as a result of FDCPA violations which took place during the

foreclosure.  Doc. Ent. 14 at 13-14 ¶¶ 10-19.  Citing Fed. R. Evid. 1003, plaintiffs raise the issue

of "the authenticity of a copy of [the] promissory note[.]" Doc. Ent. 14 at 13 ¶ 14.  Plaintiffs take

issue with the validity of assignment from First Franklin to Wells Fargo.  Doc. Ent. 14 at 13-14

¶¶ 17-18.

 To be sure, plaintiffs allege that "since Wells Fargo was not in possession of the original

note and assigned itself as Trustee for First Franklin Mortgage Loan Trust, Wells Fargo Bank

cannot be considered a holder in due course[,]" and "First Franklin Mortgage Loan Trust did not

assign Wells Fargo Bank to act as servicer of the mortgage[,] . . . this constituted an invalid

assignment and Wells Fargo Bank cannot be considered a holder in due course."  Doc. Ent. 14 at

13-14 ¶¶ 17-18.  However, this count of plaintiffs' proposed amended complaint does not specify

which section of the FDCPA plaintiffs feel was violated.[12]

 Plaintiffs' proposed claim against Orlans is based upon alleged violations of the FDCPA,

---

[11]A similar argument appears in plaintiffs' response to defendant Wells Fargo's motion to dismiss, wherein plaintiffs cite ¶¶ 13 and 14 of the original complaint and assert that "Wells Fargo Bank is not the holder in due course of the promissory note[.]" Doc. Ent. 19 at 10-11. Within this argument, plaintiffs note one court's statement that "[i]t would appear that the present plaintiff cannot be a holder in due course in its own right for two reasons. The first, there is no question that it took the note after it was over-due." *United States v. Hill*, 57 F.Supp. 934, 936 (N.D. Ohio 1944).  Therefore, plaintiffs argue, "Wells Fargo cannot be considered the holder in due course and, consequently, is a participant in predatory lending practices as it ***knew or should have known when the sale of the note from First Franklin Mortgage Loan and Trust occurred that it was in an overdue status***.  This action harmed the plaintiff as Wells Fargo commenced a foreclosure action against the plaintiffs in a fraudulent manner, in violation of RICO."  Doc. Ent. 19 at 10 (emphasis in original).

[12]Plaintiffs' attention is directed to 15 U.S.C. § 1692a(4), which defines "creditor," and 15 U.S.C. § 1692a(6), which defines "debt collector."

15 U.S.C. § 1692g(a)(3), as well as an apparent allegation that Orlans violated § 1692g(b).  Doc. Ent. 14 at 14 ¶¶ 20-26.  Plaintiffs contend that they "did not receive a 'Dunning Letter'[13] from Orlans, informing them that they were attempting to collect a debt and inform the plaintiffs they had 30 days to dispute the debt, in violation of 15 USC 1692g and 1692g(a)(3)."  Doc. Ent. 14 at 14 ¶ 23.  Furthermore, plaintiffs contend that, despite their November 11, 2008 request, "plaintiffs have not yet received plaintiffs' verification of plaintiffs' purported debt by providing the original promissory note, a signed judgment order or an accounting which is signed and dated by the person responsible for maintaining the account general ledger, in violation of the [FDCPA]."  Doc. Ent. 14 at 14 ¶ 25.

It seems clear that plaintiffs' FDCPA claim against Orlans is based at least upon 15 U.S.C. § 1692(a)(3) and perhaps on 15 U.S.C. § 1692(b).  The first amended complaint must specify the statutes upon which the causes of action are based and set forth the specific actions which resulted in the alleged violation.

**c.     The Truth in Lending Act (TILA).**  Although plaintiffs' motion to amend makes specific reference to the Truth in Lending Act (TILA) (Doc. Ent. 14 at 3, 6, 9), there is no mention of TILA or the related statutes (15 U.S.C. § 1601 et seq.) in the proposed amended complaint.  The Johnsons are the masters of their complaint.  *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 543 (6th Cir. 2006) ("As the plaintiff, Curry is the master of his complaint[.]").

---

[13]Dunning letters "are insistent or repeated demands for payment."  *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 300 (3d Cir. 2008).  *See also Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293, 1295 n.2 (M.D. Fla. 2001) ("A 'dunning letter' is a demand for payment from a delinquent debtor.").  "[A]n attorney sending dunning letters must be directly and personally involved in the mailing of the letters in order to comply with the strictures of FDCPA."  *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996).  *See also Campuzano-Burgos*, 550 F.3d at 301.

Furthermore, Fed. R. Civ. P. 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

As it stands, the proposed amended complaint does not state a claim under TILA. If plaintiffs intend to amend their complaint to contain a claim under TILA, it must be contained in the first amended complaint itself. Any such claim should be specific about the statutory section they believe was violated and/or should describe with particularity the action(s) which allegedly constituted the TILA violation.

**d.**     Although the details of plaintiffs' proposed FDCPA and TILA claims are deficient as currently set forth, this Court would have jurisdiction over a properly pleaded FDCPA or TILA claim. Therefore, in light of their pro se status and in light of the fact that they have moved to amend, plaintiffs are given leave to amend their complaint to properly assert such claims. Defendant(s) may oppose such claims by the filing of a dispositive motion.

**4.     Plaintiffs may amend their complaint to bring claims based upon common law fraud and/or the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968); however, they must do so with more specificity.**

Plaintiffs' original complaint alleges, inter alia, that "Franklin is not the bona fide holder of the instrument giving Franklin possession of the property. The contract held by Franklin became void upon committing fraud." The original complaint also alleges that "Franklin made material misrepresentations of fact to Countrywide with the intent that Countrywide would enforce the void contract upon the Plaintiffs and subject the Plaintiffs to foreclosure proceedings and recover monies through the void contract. Again this represents a continuing corrupt enterprise or scheme on the part of Franklin." Doc. Ent. 1 at ¶¶ 13, 16.

15

Referencing these paragraphs of the original complaint, defendant Wells Fargo argues that "[p]laintiffs do not allege that _Wells Fargo_ participated in the alleged fraud that resulted in the execution of the mortgage instruments." Doc. Ent. 10 at 9 (emphasis in original). It is defendant Wells Fargo's position that plaintiffs' original complaint alleges only that "Wells Fargo is a party to the ongoing corrupt enterprises and schemes of Franklin in order to obtain by Fraud property of the Plaintiffs." Doc. Ent. 1 at ¶ 21; Doc. Ent. 10 at 9.

In its motion to dismiss, defendant Wells Fargo asserts that "Plaintiffs cannot satisfy the requirement of Rule 9(b)[.]" Doc. Ent. 10 at 9. "The Sixth Circuit reads rule 9(b)'s requirement 'liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir.1993)). *See also Phelps v. American General Financial Services*, No. 08-10552, 2008 WL 3978318, 2 (E.D. Mich. Aug. 22, 2008) ("Plaintiff has not pled his allegations of fraud with particularity.") (Borman, J., adopting report and recommendation of Majzoub, M.J.). It is defendant Wells Fargo's position that the original complaint does not "identify any misrepresentation made by Wells Fargo, much less the time and place of such misrepresentation[.]" Doc. Ent. 10 at 10.

Defendant Wells Fargo's motion to dismiss also asserts that any claim by plaintiffs that Wells Fargo has violated the RICO Act must be dismissed. Doc. Ent. 10 at 10-12. The Racketeer Influenced and Corrupt Organizations Act (RICO) is codified at 18 U.S.C. §§ 1961-1968. Plaintiffs' original and proposed amended complaints mention 18 U.S.C. §§ 1961-1968 as

16

bases for the complaint (Doc. Ent. 1 at 1, 3; Doc. Ent. 14 at 12 ¶ 1). Defendant Wells Fargo

contends that plaintiffs "have not identified any particular provision of RICO that has allegedly

been violated, nor have they pled any of the required facts to allow a RICO claim to survive a

motion to dismiss." Doc. Ent. 10 at 10.

As Wells Fargo acknowledges, "[t]o prove a RICO violation, [plaintiff] must show: 1)

there were two or more predicate offenses;[14] 2) the existence of an enterprise engaged in or

affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity

and the enterprise; and 4) an injury to his business or property by reason of the above." *Frank v.*

*D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) (*Beneficial Standard Life Ins. Co. v. Madariaga*,

851 F.2d 271, 274 n. 5 (9th Cir.1988)); Doc. Ent. 10 at 10. Furthermore, "[i]n order to establish

standing under § 1964(c),[15] a plaintiff must show (1) a violation of § 1962, (2) an injury to his

business or property, and (3) that his injury was proximately caused by a RICO violation."

*Sharp v. Ingham County*, No. 01-1164, 2001 WL 1557062, 2 (6th Cir. Dec. 4, 2001).

Defendant Wells Fargo claims that plaintiffs have not alleged facts to support each of the

*Frank* elements. Doc. Ent. 10 at 10. For example, defendant claims that plaintiffs "do not allege

any facts showing any relationship between any acts or omissions of Wells Fargo, nor do they

plead any facts to suggest any threat of future criminal conduct." Doc. Ent. 10 at 11. After

discussing why plaintiffs' original complaint is deficient with respect to alleging facts in support

---

[14]*Pagel v. Washington Mut. Bank, Inc.*, 153 Fed.Appx. 498, 502 (10th Cir. 2005) ("a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing racketeering activity[.]").

[15]The title of 18 U.S.C. § 1964 is "Civil remedies."

17

of the elements of a RICO claim, defendant Wells Fargo states:

> Simply put, Plaintiffs have not alleged that Wells Fargo had any connection to the execution of their mortgage loan – nor have Plaintiffs identified any specific acts or omissions of Wells Fargo.  Rather, Plaintiffs' allegations against Wells Fargo – that it is not entitled to foreclose on their property because the underlying mortgage transaction is void for fraud – are legally significant, if at all, only to the extent Plaintiffs may wish to assert an affirmative defense to the foreclosure action. But such allegations do not support a separate claim against Wells Fargo.

Doc. Ent. 10 at 12.

In its response to plaintiffs' motion to amend, defendant Wells Fargo contends that the proposed first amended complaint "still appears to attempt to state a claim under [RICO], but the proposed amendment is still devoid of any allegations of the elements required to state such a claim."  Doc. Ent. 18 at 2.

Plaintiffs' response to the motion to dismiss argues that "[p]laintiffs have successfully pled a cause of action under RICO[.]"  Doc. Ent. 19 at 3; Doc. Ent. 19 at 12-14.  Specifically, they state, "[d]ue to Wells Fargo's purchase of plaintiffs' note when it was in an overdue [status], Wells Fargo violated the RICO Act, causing harm to the plaintiffs, by commencing foreclosure proceedings when it was not the holder in due course."  Plaintiffs contend that "[s]ince Defendant Wells Fargo Bank is not a bona fide holder of the instrument giving said alleged holders possession of the property, the contract created by the original mortgage became void upon committing fraud which is a violation of RICO."  Doc. Ent. 19 at 12.

Specifically, plaintiffs mention 18 U.S.C. § 1962(a), which provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition

18

of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a).  *See* Doc. Ent. 19 at 12.  Plaintiffs claim defendant Wells Fargo has

violated this statute, because it "is limited in its powers and capacity and cannot lend its credit by

guaranteeing the debts of another, which has occurred in this case[,]" and "is not a bona fide

holder of the instrument giving said alleged holders possession of the property, the contract

created by the original mortgage became void upon committing fraud[.]" Doc. Ent. 19 at 12.

Also, plaintiffs rely upon *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985),

wherein the United States Supreme Court stated:

In sum, we can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble-damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar Sedima's action.

*Sedima*, 473 U.S. at 493.  *See also* Doc. Ent. 19 at 13-14.  Yet, the Supreme Court also stated:

Sedima may maintain this action if the defendants conducted the enterprise through a pattern of racketeering activity. The questions whether the defendants committed the requisite predicate acts, and whether the commission of those acts fell into a pattern, are not before us. The complaint is not deficient for failure to allege either an injury separate from the financial loss stemming from the alleged acts of mail and wire fraud, or prior convictions of the defendants.

*Sedima*, 473 U.S. at 522.  Plaintiffs contend that "[d]efendant need only have caused harm to the

19

plaintiff, which it has as stated throughout this response."  Doc. Ent. 19 at 14.

In reply, defendant Wells Fargo notes that "[a]lthough Plaintiffs' proposed amended complaint cites the RICO statute, it does not make any allegations to show that Wells Fargo committed any predicate offenses, participated in an enterprise affecting interstate commerce, or engaged in a pattern of racketeering activity.  Nor does the proposed amended complaint contain any allegations supporting a fraud claim - nothing to show the time/place/content of any alleged misrepresentation, the fraudulent scheme, or the fraudulent intent of Wells Fargo."  Doc. Ent. 20 at 5.

Upon consideration, plaintiffs are permitted to file a first amended complaint which brings claims based upon fraud and/or the RICO act.  However, in so doing, plaintiffs are reminded that any claim of fraud must be pleaded in accordance with Fed. R. Civ. P. 9.  Furthermore, any alleged violation of RICO must be pleaded in accordance with the elements set forth above in *Frank* and *Sharp*.

**5.    Plaintiffs' Uniform Commercial Code and Uniform Securities Act claims must be pleaded with more specificity.**

Plaintiffs' original and proposed first amended complaint rely upon the UCC §§ 8-501 ("Securities Account; Acquisition of Security Entitlement from Securities Intermediary.") and/or 3-311 ("Accord and Satisfaction by Use of Instrument.").  Doc. Ent. 1 ¶¶ 10, 14; Doc. Ent. 14 at 15 ¶ 4.[16]  Perhaps plaintiffs intend to bring claims pursuant to Mich. Comp. Laws §§ 440.3311 ("Accord and satisfaction by use of instrument") and 440.8501 ("Securities account, defined;

---

[16]In the response to defendant Wells Fargo's motion to dismiss, plaintiffs claim that "accord and satisfaction have been reached in accordance with UCC 3-311(d)."  Doc. Ent. 19 at 12.

20

acquisition of security entitlements, conditions").

It also appears, based upon the brief in support of plaintiffs' motion for leave to file a

first amended complaint, that plaintiff is seeking to base claims upon the "Uniform Securities

Act," Doc. Ent. 14 at 9, which this order assumes is Michigan's Uniform Securities Act, codified

at Mich. Comp. Laws §§ 451.501-451.813.  In their response to the motion to dismiss, plaintiffs

claim that defendant Wells Fargo has violated Mich. Comp. Laws § 451.503.[17]  Doc. Ent. 19 at

12.

"[T]he district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.

Assuming plaintiffs amend their complaint to assert properly pleaded FDCPA and/or TILA

claims, plaintiffs may amend their complaint to specify and properly plead state law claims.  If

plaintiffs intend to bring claims under *Michigan's* Uniform Commercial Code and/or the

*Michigan* Uniform Securities Act, the appropriate statute(s) must be cited and the underlying

actions must be described with specificity in the first amended complaint.  Furthermore, plaintiff

is cautioned that the Court's jurisdiction over any such claims is subject to 28 U.S.C. § 1367(c).

**6.     Plaintiffs may amend their complaint to properly plead claims pursuant to Mich. Comp. Laws §§ 600.3216, 600.3232.**

In Michigan, the foreclosure of mortgages by advertisement are governed by Mich.

Comp. Laws §§ 600.3201 - 600.3285.  Plaintiffs' proposed first amended complaint specifically

---

[17]"It is unlawful for any person with intent to deceive to make, offer, or sell imitation or
false ingots, bars of bullion, wafers, medals, or similar artifacts, or certificates or other
instruments representing securities."  Mich. Comp. Laws § 451.503.

21

mentions Mich. Comp. Laws §§ 600.3216 ("Sale; time, place")[18] and 600.3232 ("Deed of sale; endorsement, deposit with register, recording; entry upon redemption").[19]  Doc. Ent. 14 at 14 ¶ 22, Doc. Ent. 14 at 15 ¶ 2.  Within the proposed claim against Orlans, plaintiffs contend that "the individual executing the Sheriff's Deed was Yolanda Diaz, who was not a sheriff, deputy or under deputy, thereby nullifying the service of the Deed in violation of [Mich. Comp. Laws §] 600.3216."  Doc. Ent. 14 at 14 ¶ 22.  With respect to damages, plaintiffs contend that there were "countless misrepresentations, and violations of . . . [Mich. Comp. Laws §§ 600.3216 and 600.3232]."  Doc. Ent. 14 at 15.

In response to plaintiffs' motion to amend, defendant Wells Fargo contends that "Plaintiffs had the opportunity to [challenge Wells Fargo's foreclosure on the property at issue] during the foreclosure action, and should not be allowed to attack it collaterally in this Court."

---

[18]"The sale shall be at public sale, between the hour of 9 o'clock in the forenoon and 4 o'clock in the afternoon, at the place of holding the circuit court within the county in which the premises to be sold, or some part of them, are situated, and shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, undersheriff, or a deputy sheriff of the county, to the highest bidder."  Mich. Comp. Laws § 600.3216.

[19]"The officer or person making the sale shall forthwith execute, acknowledge, and deliver, to each purchaser a deed of the premises bid off by him; and if the lands are situated in several counties he shall make separate deeds of the lands in each county, and specify therein the precise amounts for which each parcel of land therein described was sold. And he shall endorse upon each deed the time when the same will become operative in case the premises are not redeemed according to law. Such deed or deeds shall, as soon as practicable, and within 20 days after such sale, be deposited with the register of deeds of the county in which the land therein described is situated, and the register shall endorse thereon the time the same was received, and for the better preservation thereof, shall record the same at length in a book to be provided in his office for that purpose; and shall index the same in the regular index of deeds, and the fee for recording the same shall be included among the other costs and expenses allowed by law. In case such premises shall be redeemed, the register of deeds shall, at the time of destroying such deed, as provided in section 3244 of this chapter, write on the face of such record the word "Redeemed", stating at what date such entry is made, and signing such entry with his official signature."  Mich. Comp. Laws § 600.3232 (internal footnote omitted).

Doc. Ent. 18 at 2.[20]  However, here again, assuming plaintiffs amend their complaint to assert

properly pleaded FDCPA and/or TILA claims, plaintiffs may amend their complaint to add

properly pleaded state law claims under Mich. Comp. Laws §§ 600.3216 and 600.3232.  The

defendant(s) against whom such claims are brought should be clear and the actions underlying

the alleged violations should be described.

**E.     Under Fed. R. Civ. P. 15(a)(2), I conclude that justice requires that plaintiffs be given the opportunity to file a first amended complaint.**

With respect to its aforementioned motion to dismiss, defendant Wells Fargo stated that

"[t]he proposed amended complaint is nothing more than a random list of legal conclusions

wholly unsupported by any factual allegations against Wells Fargo."  Doc. Ent. 20 at 6.  *See*

*Elsman v. Standard Federal Bank*, 46 Fed.Appx. 792, 799 (6th Cir. 2002) ("Here, Elsman's

complaint contains only the summary conclusion that the defendants' actions violated the TILA,

the Consumer Credit Protection Act, the Fair Debt Collection Act, RICO, and state law.  Elsman

makes no attempt in his complaint or in his briefs to present any facts concerning the elements

required to prove violation of any of the aforementioned federal statutes and state claims.").

As described in the foregoing section, plaintiffs' proposed amended complaint is

deficient in many areas.  However, having reviewed plaintiffs' motion to amend, the brief in

support, and the proposed amended complaint, and being mindful of the directives set forth in

---

[20]"Because the [plaintiff]s' RICO claims could impair the rights established in the state court mortgage foreclosure proceedings, we hold that they are barred by the doctrine of res judicata."  *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th 1986).  "Even assuming, however, that the federal courts have exclusive jurisdiction over RICO claims, the [plaintiffs] were still required to raise their allegations of fraud and forgery, which form the sole basis for their RICO claims, as a defense to the mortgage foreclosures."  *Henry*, 808 F.2d at 1236.

*Haines v. Kerner*, 404 U.S. 519 (1972) and Fed. R. Civ. P. 8(e),[21] I conclude that plaintiff has

met the standard for seeking amendment under Fed. R. Civ. P. 15(a)(2).  Therefore, plaintiffs'

motion to amend is granted in part.

Plaintiffs may file a first amended complaint which complies with Fed. R. Civ. P. 8(a)

and the requirements set forth in this order.  As previously noted, "[u]ndue delay in filing, lack

of notice to the opposing party, bad faith by the moving party, repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party, and futility of

amendment are all factors which may affect the decision."  *Hageman v. Signal L. P. Gas, Inc.*,

486 F.2d 479, 484 (6th Cir.1973), citing *Foman*, 371 U.S. at 182 (1962).  According to plaintiff,

"[t]here has been no discovery taken to date as this case is in its infantile stages[,]" and

"plaintiffs' amendment is timely."  Doc. Ent. 14 at 8.  It does appear that "[t]here is no evidence

of prejudice to the defendants or bad faith on the part of the plaintiff."  Doc. Ent. 14 at 9.

Furthermore, plaintiffs have asserted that "shortly after the filing of their original complaint,

facts became known that would further support their claims[.]" Doc. Ent. 14 at 9.

To the extent plaintiffs' proposed amended complaint alleges statutory violations in its

"damages" section (Doc. Ent. 14 at 15 ¶¶ 1-4), plaintiffs are directed that any first amended

complaint should make clear against which defendants each of the violations are asserted.  For

example, the proposed amended complaint mentions Mich. Comp. Laws § 600.3232 and UCC §

3-311(d) only in the "damages" section.  Doc. Ent. 14 at 15 ¶ 2.  Therefore, it is unclear against

which defendant(s) these claims are brought.

Plaintiffs are put on notice that (1) the first amended complaint, once filed, will

---

[21]"Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).

supercede the original complaint, E.D. Mich. LR 15.1;[22] (2) the first amended complaint must comply with Fed. R. Civ. P. 8(a); (3) the first amended complaint should specify against which defendants each of the violations are asserted and should describe the underlying actions which support the alleged violation; and (4) the first amended complaint is subject to a Fed. R. Civ. P. 12(b)(6) motion to dismiss pursuant to the standards recently discussed in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009).

## II.    ORDER

Accordingly, plaintiffs' motion for leave to file first amended complaint (Doc. Ent. 14) is GRANTED IN PART and DENIED IN PART.  Plaintiffs shall file their first amended complaint on or before Monday, August 24, 2009.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).


s/Paul J. Komives
PAUL J. KOMIVES
Dated: July 22, 2009                    UNITED STATES MAGISTRATE JUDGE

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record    by electronic means or U.S. Mail on July 22, 2009.
>
> s/Eddrey Butts
> Case Manager

---

[22]"Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."  E.D. Mich. LR 15.1.