# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES ROBINSON and
RESHELLE ROBINSON,

      Plaintiffs,

                         CASE NO. 2:08-CV-13048
                         JUDGE GERALD E. ROSEN
                         MAGISTRATE JUDGE PAUL J. KOMIVES

v.

WELLS FARGO BANK, N.A., et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS WELLS FARGO AND SAXON'S SEPTEMBER 4, 2009 MOTION TO DISMISS (Doc. Ent. 26)

## Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.    This report and recommendation assesses only defendants Wells Fargo and Saxon's September 4, 2009 Motion to Dismiss (Doc. Ent. 26) plaintiffs' August 21, 2009 first amended complaint (Doc. Ent. 25). . . . . . . . . . . . . . 5
          2.    The first amended complaint names five (5) defendants and sets forth five (5) causes of action; however, only the first three (3) causes of action need to be addressed here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          3.    Defendants Wells Fargo and Saxon's Motion concerning the three (3) causes of action related to them should be granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               a.    Whether, "as a matter of law, any claims against Wells Fargo or Saxon for alleged violations of the TILA or the FDCPA are barred by the one-year statute of limitations applicable to such claims[?]" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               b.    Whether "the TILA and FDCPA allegations are demonstrably insufficient upon a review of the documents referenced in the complaint[?]" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               c.    Whether "as a matter of law, neither Wells Fargo nor Saxon can be liable for any conduct by any other entity that allegedly violated the TILA or the FDCPA[?]" . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               d.    Whether "even if Wells Fargo is not a holder in due course - the only specific allegation against Wells Fargo of Plaintiffs' six counts - the absence of holder in due course status by itself is not a claim upon which any relief can be granted[?]" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**I.     RECOMMENDATION:**  The Court should grant defendants Wells Fargo and Saxon's September 4, 2009 motion to dismiss (Doc. Ent. 26) plaintiffs' August 21, 2009 first amended complaint (Doc. Ent. 25).

Specifically, the Court should conclude plaintiffs' TILA claims (Count II) - to the extent they are brought against Wells Fargo and Saxon - and plaintiffs' FDCPA claim (Count IV) - to the extent it is brought against Saxon - are barred by the statute of limitations.  *See* Sections II.C.3.a.ii & II.C.3.a.iii.  Substantively, the Court should conclude that defendants Wells Fargo and Saxon are entitled to dismissal of the TILA claims against them.  *See* Sections II.C.3.b.ii Section II.C.3.c.i. Also, the Court should conclude that defendant Saxon is entitled to dismissal of plaintiffs' FDCPA claim against it (Section II.C.3.b.iii) and that defendants Wells Fargo and Saxon cannot be held liable for the alleged FDCPA violations by Orlans (Section II.C.3.c.ii).

Finally, the Court should dismiss plaintiffs' second cause of action (Count III - against Wells Fargo and First Franklin) as it relates to defendant Wells Fargo.  *See* Section II.C.3.d.iii.

**II.     REPORT:**

**A.     Background**

On or about August 21, 2003, James Robinson and Reshelle Robinson "entered into a mortgage contract with First Franklin[.]" Doc. Ent. 1 at 2 ¶ 9; Doc. Ent. 14 at 13 ¶ 11; Doc. Ent. 19 at 8; Doc. Ent. 26-3 at 5-19.  The initial monthly payment was $676.87.  Doc. Ent. 26-3 at 1.[1]

Under the terms of the August 21, 2003 adjustable rate note (Doc. Ent. 26-3 at 1-4) and the August 21, 2003 adjustable rate rider (Doc. Ent. 26-3 at 20-22), the change dates were September 1, 2005 "and on that day every sixth month thereafter."  Doc. Ent. 26-3 at 1, 20.  It appears that,

---

[1]In plaintiffs' November 2, 2009 amended complaint, which has been stricken from the record, plaintiffs allege that, on or about September 10, 2003, Mr. Robinson received "a copy of the closing documents that were supposedly signed by [James Robinson]."  Doc. Ent. 35 at 2 ¶ 6.

effective September 1, 2005, the payment became $ 861.86. Doc. Ent. 26-6 at 1.

On or about February 22, 2006, Saxon Mortgage Services, Inc., sent a letter to Reshelle Robinson to inform her that "effective with [her] payment due on [April 1, 2006], Saxon Mortgage Services, Inc. has recalculate[d] [her] monthly payment and interest rate in accordance with the terms of [her] mortgage note." Effective April 1, 2006, the principal and interest payment was $922.18. Doc. Ent. 26-6. It is not clear whether changes in the payment took place on September 1, 2006, April 1, 2007 and September 1, 2007.

In any event, on December 31, 2007, an assignment was granted from First Franklin Financial Corporation to Wells Fargo Bank National Association. Doc. Ent. 14 at 13 ¶ 11; Doc. Ent. 26-4. The following month, on January 30, 2008, a sheriff's deed was executed as to the property located at 14675 Rutherford, Detroit, Michigan. *See* www.waynecountylandrecords.com/realestate.

## B.      Fed. R. Civ. P. 12(b)(6)

Currently before the Court is defendants Wells Fargo and Saxon's September 4, 2009 Fed. R. Civ. P. 12(b)(6) motion to dismiss. Doc. Ent. 26. This rule provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

"A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, and opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." Fed. R. Civ. P. 12(b).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings.").[2]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 550 U.S. at 555 (citations and quotations omitted). It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 561. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Claims should be "nudged . . . across the line from

_____

[2]Even though this report and recommendation cites to the materials attached to defendants' September 4, 2009 motion to dismiss, I decline to convert the motion into one for summary judgment. Paragraph 18 of the August 21, 2009 first amended complaint mentions the August 21, 2003 mortgage contract (*see* Doc. Ent. 26-3 [Aug. 21, 2003 Adjustable Rate Note, Mortgage, etc.] & Doc. Ent. 26-5 [Aug. 21, 2003 Federal Truth-In-Lending Disclosure Statement and Settlement Statement]). Also, several paragraphs (such as ¶¶ 18, 21-22) mention the transfer of the note to Wells Fargo Bank[,]" (*see* Doc. Ent. 26-4 [Dec. 31, 2007 Assignment of Mortgage]). Furthermore, Paragraph 36a mentions the February 22, 2006 letter (*see* Doc. Ent. 26-6). *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) ("In the present case, Greenberg's and Rossmann's insurance policies that were attached to Life of Virginia's motion to dismiss are not 'matters outside the pleadings.' First, the insurance policies are referred to throughout the complaint. Second, the policies are central to the sisters' claims.").

conceivable to plausible" to avoid dismissal. *Id.* *See also*

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-1951 (2009) ("respondent's complaint has not 'nudged [his]

claims' of invidious discrimination 'across the line from conceivable to plausible.'") (quoting *Bell*

*Atlantic Corp.*).

The reviewing court must construe the complaint in the light most favorable to plaintiff and

must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried*

*Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the

opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything

alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The

Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel

may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate

a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *overruled on other*

*grounds by Bell Atlantic Corp.*, 550 U.S. at 554-563. A dismissal under Rule 12(b)(6) is generally

disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL

PRACTICE ¶ 12.07 (2d ed. 1995).

## C.  Analysis

**1.  This report and recommendation assesses only defendants Wells Fargo and Saxon's September 4, 2009 Motion to Dismiss (Doc. Ent. 26) plaintiffs' August 21, 2009 first amended complaint (Doc. Ent. 25).**

As an initial matter, I note that four (4) complaints have been filed in this case (Doc. Ent. 1

[July 15, 2008 original complaint], 25 [August 21, 2009 first amended complaint], 35 [November

2, 2009 second amended complaint][3] and 39 [May 14, 2010 third amended complaint]).[4] However, consistent with my order entered this date, the second and third amended complaints (Doc. Entries 35 and 39) have been stricken from the record.

Therefore, the one and only complaint assessed in this report and recommendation is plaintiffs' August 21, 2009 first amended complaint (Doc. Ent. 25).[5] My analysis of this complaint takes into consideration the direction set forth in my July 22, 2009 order, wherein I specifically concluded that plaintiffs' November 24, 2008 proposed amended complaint (Doc. Ent. 14 at 11-15) suffered from some deficiencies. Doc. Ent. 22 at 6-23. Within that conclusion, I specifically noted the following: (1) Plaintiffs' proposed amended complaint added defendant Orlans, FDCPA claims and state law claims; (2) Proposed defendant Orlans's identity was unclear; (3) Plaintiffs' FDCPA claim(s) and TILA claim were deficient as set forth in the proposed amended complaint; (4) Plaintiffs might amend their complaint to bring claims based upon common law fraud and/or the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968); however, they must do so with more specificity; (5) Plaintiffs' Uniform Commercial Code and Uniform Securities Act claims must be pleaded with more specificity; and (6) Plaintiffs may amend their complaint to properly plead claims pursuant to Mich. Comp. Laws §§ 600.3216, 600.3232.

My July 22, 2009 order also put plaintiffs on notice that "(1) the first amended complaint,

_____

[3]On May 4, 2010, I entered an order (Doc. Ent. 38) granted in part defendant Wells Fargo's motion (Doc. Ent. 36) to strike the November 2, 2009 second amended complaint (Doc. Ent. 35).

[4]This number does not include plaintiffs' November 24, 2008 proposed first amended complaint. Doc. Ent. 14 at 11-15.

[5]An answer to this complaint was filed on September 16, 2009 by defendant Orlans Associates. Doc. Ent. 31.

once filed, will supercede the original complaint, E.D. Mich. LR 15.1; (2) the first amended complaint must comply with Fed. R. Civ. P. 8(a); (3) the first amended complaint should specify against which defendants each of the violations are asserted and should describe the underlying actions which support the alleged violation; and (4) the first amended complaint is subject to a Fed. R. Civ. P. 12(b)(6) motion to dismiss pursuant to the standards recently discussed in Ashcroft v. Iqbal, 129 S.Ct. 1937 (May 18, 2009)." Doc. Ent. 22 at 24-25.

Plaintiffs addressed some of these issues when filing their August 21, 2009 first amended complaint (Doc. Ent. 25). For example, my order provided that "[a]ny amended complaint should clarify whether the law firm itself is the intended defendant." Doc. Ent. 22 at 9. "Orlans Associates" has been identified as a defendant. Doc. Ent. 25 at 2 ¶ 9. Furthermore, the first amended complaint's five (5) counts, each specify the defendant(s) against whom the counts are brought. Doc. Ent. at 3-9 ¶¶ 13-49.

With this backdrop, the Court considers defendants Wells Fargo and Saxon's September 4, 2009 motion to dismiss (Doc. Ent. 26) plaintiffs' August 21, 2009 first amended complaint (Doc. Ent. 25). For the reasons stated in my order of this date, this dispositive motion is unopposed,[6] despite this Court's several attempts to permit plaintiffs to file a response. *See* Doc. Entries 34, 38 & 40.

**2.      The first amended complaint names five (5) defendants and sets forth five (5) causes**

_____

[6]It is worth noting that my May 4, 2010 order (Doc. Ent. 38 at 7) denied defendant Wells Fargo's motion to strike (Doc. Ent. 36) to the extent it requested that its September 4, 2009 motion to dismiss (Doc. Ent. 26) be granted as unopposed. My order specifically permitted plaintiffs up to and including Friday, May 14, 2010 by which to file a response to the motion and provided that plaintiffs were free to argue that the allegations set forth in their November 2, 2009 second amended complaint (Doc. Ent. 35) would cure any deficiencies the Court may find in their August 21, 2009 first amended complaint (Doc. Ent. 25). Doc. Ent. 38 at 7, 10.

**of action; however, only the first three (3) causes of action need to be addressed here.**

The first amended complaint (Doc. Ent. 25) identifies as defendants First Franklin, Wells Fargo, Saxon Mortgage Services, Inc., Orlans Associates and Wayne County. Doc. Ent. 25 at 1, 2 ¶¶ 7-11. Furthermore, it sets forth five (5) counts: (I) TILA allegations against defendant First Franklin Mortgage Loan (¶¶ 13-16); (II) allegations against Wells Fargo Bank and First Franklin Mortgage Loan (¶¶ 17-29); (III) allegations against defendant Orlans (¶¶ 30-42); (IV) allegations of fraud committed by defendant Wayne County pursuant to Mich. Comp. Laws § 51.70 (¶¶ 43-53); and (V) a violation of Mich. Comp. Laws § 565.161 - annual statements to mortgagor by Wayne County (¶¶ 48-49).

The instant motion is only brought on behalf of defendants Wells Fargo and Saxon. As a result, this report will only address the first three causes of action (Count II, Count III & Count IV).[7] Accordingly, this report and recommendation does not address the first amended complaint's fourth and fifth causes of action (Counts V and VI) which are unrelated to these two defendants.[8]

---

[7]The first cause of action (Count II) is brought against First Franklin (Doc. Ent. 25 at ¶¶ 13-16); however, defendants Wells Fargo and Saxon contend that "the remedy sought under this theory - rescission - would also affect Wells Fargo." Doc. Ent. 26 at 8.

[8]As defendants recognize, the fourth (Count V) and fifth (Count VI) causes of action are brought against defendant Wayne County. Doc. Ent. 25 ¶¶ 43-53, 48-49. In the fourth cause of action (Count V ¶ 47), brought against defendant Wayne County, plaintiffs cite Mich. Comp. Laws § 51.70 ("Deputies, special deputies; appointment; revocation, liability of sheriff for acts, defaults, and misconduct; bond") and take issue with the appointment of Yolanda Diaz as a Special Deputy Sheriff. It appears that plaintiffs also intended to cite Mich. Comp. Laws § 600.3216 ("Sale; time, place"), which provides that "[t]he sale shall be at public sale, between the hour of 9 o'clock in the forenoon and 4 o'clock in the afternoon, at the place of holding the circuit court within the county in which the premises to be sold, or some part of them, are situated, and shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, undersheriff, or a deputy sheriff of the county, to the highest bidder." This report does not construe the use of the subject "Defendants" in ¶ 47 as bringing this claim against any named

**3.      Defendants Wells Fargo and Saxon's Motion concerning the three (3) causes of action related to them should be granted.**

In their September 4, 2009 dispositive motion, defendants Wells Fargo and Saxon seek dismissal of "all of Plaintiffs' claims against Wells Fargo[.]" Doc. Ent. 26 at 2.  It is defendants' position that "[p]laintiffs' Amended Complaint against Defendants Wells Fargo and Saxon should be dismissed under Fed. R. Civ. P. 12(b)(6) where the Complaint fails to state an actionable claim against them[.]" Doc. Ent. 26 at 4.

According to defendants Wells Fargo and Saxon, "[i]n January 2008, Wells Fargo foreclosed on Plaintiffs' property due to Plaintiffs' default on their mortgage loan obligations."  Doc. Ent. 26 at 7.  In the end, the parties request that the Court dismiss for failure to state a claim plaintiffs' first amended complaint against Wells Fargo and Saxon.  Doc. Ent. 26 at 16.

**a.      Whether, "as a matter of law, any claims against Wells Fargo or Saxon for alleged violations of the TILA or the FDCPA are barred by the one-year statute of limitations applicable to such claims[?]"**

**i.**      The explanation of the Consumer Credit Protection Act (CCPA) which has appeared in my prior filings in this case bears repeating here.  For the sake of explanation, the CCPA is codified at 15 U.S.C. §§ 1601-1693r. The subchapters of the CCPA were recently explained by the 1st Circuit as follows: "Subchapter I of the Consumer Credit Protection Act is the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. , which imposes disclosure

---

defendant other than defendant Wayne County.

In the fifth cause of action (Count VI ¶ 49), brought against defendant Wayne County, plaintiffs claim they did not receive the annual statements to mortgagor required by Mich. Comp. Laws § 565.161, which provides in part that "the mortgagee or agent receiving the periodic payments shall furnish the mortgagor with a statement within 60 days of the close of the calendar year, showing the beginning balance of the escrow fund, total receipts received by the fund during the calendar year, an itemized statement of all expenditures from the fund during the calendar year and the balance in the fund at the end of the calendar year."

requirements on creditors. Subchapter II places restrictions on garnishment of compensation, 15 U.S.C. § 1671 et seq. Subchapter II-A is the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. , which protects consumers from unfair trade practices by credit repair organizations. Subchapter III is the FCRA, 15 U.S.C. § 1681 et seq. , which primarily regulates credit reporting agencies but also places requirements on users of credit information from these agencies. Subchapter IV is the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., which prohibits discrimination in the extension of credit. Subchapter V is the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Subchapter VI is the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. , which regulates the participants in electronic fund transfer systems." *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir. 2008) (emphasis added).

The TILA and the FDCPA are implicated in plaintiffs' August 21, 2009 first amended complaint. It is defendants Wells Fargo and Saxon's argument that "[a]ny claim for relief premised upon alleged violations of the TILA or the FDCPA is untimely and is barred by the one-year statute of limitations applicable to such claims." Doc. Ent. 26 at 10.

**ii.**     The applicable statute of limitation for a TILA claim is one year. *See* 15 U.S.C. § 1640(e),[9]

_____

[9]"Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639 of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs[.]" 15 U.S.C. § 1640.

*MacDermid v. Discover Financial Services*, 488 F.3d 721, 734 n.3 (6th Cir. 2007) ("The TILA provides for a one-year statute of limitations.") (citing 15 U.S.C. § 1640(e)).

Plaintiffs' TILA claim began to run on August 21, 2003 - the date they signed the mortgage. *See Lancaster v. Countrywide Home Loans, Inc.*, No. 09-12198, 2009 WL 2584736, 5 (E.D. Mich. Aug. 19, 2009) (Cleland, J.) (With respect to statutory damages for a TILA violation, "[p]laintiff obtained her 2006 Loan in May of 2006 and did not file the instant lawsuit until April 2009. The statutory period has run, and therefore, damages for Plaintiff's May 2006 Loan are barred."); *Keith v. Countrywide Home Loans, Inc.*, No. 08-13398, 2009 WL 1324904, *2 (E.D. Mich. May 12, 2009) (Friedman, J.) ("Plaintiffs mortgage originated on May 27, 2004[,] but they did not bring this action until August 5, 2008, well after the statute of limitations for bringing a TILA claim had expired. As a result, Defendants are entitled to summary disposition on all TILA claims in the Amended Complaint.").

Plaintiffs did not file the instant lawsuit until July 15, 2008 - nearly five (5) years later.[10]

---

[10]15 U.S.C. § 1635 concerns the "[r]ight of rescission as to certain transactions." With respect to time limits, it generally provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f). *See also Keith*, 2009 WL 1324904 at *2 ("[t]he statute of limitations for all TILA claims is three years from the date of the consummation of the transaction. 15 U.S.C. § 1635(f)."); *Beydoun v. Countrywide Home Loans, Inc.*, No. 09-10445, 2009 WL 1803198, 6 (E.D. Mich. June 23, 2009) (Zatkoff, J.) ("an obligor's 'right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first.'") (quoting 15 U.S.C. § 1635(f)); and *Greene v. Benefit Mortg. Corp.*, No. 08-12968, 2009 WL 56056, 8 (E.D. Mich. Jan. 8, 2009) (Roberts, J.) ("TILA provides a limited right to rescind a mortgage loan if the required disclosures are not provided, but a foreclosure sale terminates any unexpired right to rescind.") (citing *Worthy v. World Wide Financial Services, Inc.*, 347 F.Supp. 502, 506-08 (E.D. Mich.2004)).

As defendants point out, any 15 U.S.C. § 1635 claim filed by plaintiffs on July 15, 2008 "is equally time-barred as well past the three-year limit from August 21, 2003, and also after the [January 30, 2008 Sheriff's] sale of the property." Doc. Ent. 26 at 10 n.4.

**iii.** The applicable statute of limitation for a FDCPA claim is also one year. *See* 15 U.S.C. § 1692k(d),[11] *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 404 (6th Cir. 1998) ("The FDCPA statute of limitations is one year.") (referencing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 n.12 (7th Cir.1997)). In other words, "[a] claim under the FDCPA must be brought 'within one year from the date on which the violation occurs.'" *Chase Manhattan Mortg. Corp. v. Blakely-El*, No. 06-10343, 2007 WL 1041256, 2 (E.D. Mich. Apr. 5, 2007) (Feikens, J.) (quoting 15 U.S.C. § 1692k(d)).

"'The relevant consideration is the date of the alleged violation by the debt collector.'" *Chase Manhattan Mortg. Corp.*, 2007 WL 1041256 at 2 (quoting *Purnell v. Arrow Financial Services, LLC*, No. 05-73384, 2007 WL 421828 (E.D. Mich. Feb.2, 2007) (Cleland, J.)). Within their FDCPA cause of action (Doc. Ent. 25 ¶¶ 30-42), plaintiffs refer to the February 22, 2006 letter from Saxon Mortgage Services, Inc. Doc. Ent. 25 ¶ 36. *See also* Doc. Ent. 26-6. Plaintiffs claim "they have never heard of" Saxon. Doc. Ent. 25 ¶ 36a. Plaintiffs also claim that "nowhere in the letter did Saxon identify itself as being the attorney in fact for Wells Fargo so the plaintiffs would know who the letter was from." Doc. Ent. 25 ¶ 36b. Furthermore, plaintiffs contend, "[t]he contents of the letter contained information regarding an increase in their loan; however, it was riddled with nothing but percentages and was unable to be deciphered by the plaintiffs due to its complexity. The letter was extremely unclear." Doc. Ent. 25 ¶ 36c. Additionally, plaintiffs allege, "[t]hat under the Least Sophisticated Consumer Standard, the language contained in this letter was very confusing

---

[11]"An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) ("Jurisdiction").

and violates 15 USC 1692e." Doc. Ent. 25 ¶ 36d.

Therefore, to the extent Paragraph 36 sets forth a FDCPA claim against defendant Saxon, and assuming arguendo that the February 22, 2006 letter was an attempt to collect a debt or violated the FDCPA, it is time-barred. In other words, any FDCPA claim against Saxon based on the allegation that the February 22, 2006 letter violated the FDCPA should have been brought by February 22, 2007.

**b.      Whether "the TILA and FDCPA allegations are demonstrably insufficient upon a review of the documents referenced in the complaint[?]"**

i.      Plaintiffs' first cause of action (Count II) purports to allege Truth In Lending Act (TILA) claims against defendant First Franklin. Although the instant motion is not brought on behalf of defendant First Franklin, defendants Wells Fargo and Saxon address this claim in their motion.

It is not clear upon which section of TILA plaintiffs' claims are based. However, plaintiffs directly refer to "226.17" and "MCLA 226.22." Doc. Ent. 25 ¶¶ 14-15. These are likely references to 12 C.F.R. § 226.17 ("General disclosure requirements.") and 12 C.F.R. § 226.22 ("Determination of annual percentage rate.").

By way of explanation, Part 226 (12 C.F.R. §§ 226.1 - 226.58) is titled, "Truth in Lending (Regulation Z)[.]" With respect to these sections, the Sixth Circuit has noted: "Reg. §§ 226.17 and 226.18 set forth TILA's disclosure requirements. Under Reg. § 226.18 a creditor must disclose applicable information about the loan transaction, including the amount financed, the finance charge, the annual percentage rate, the payment schedule, information regarding the variable rate, the total payments and total sale price." *United States v. Petroff-Kline*, 557 F.3d 285, 294 (6th Cir. 2009). "TILA liability arises when a creditor fails to make the required disclosures 'before consummation of the transaction' (Reg. § 226.17(b)), defined as 'the time that a consumer becomes contractually

13

obligated on a credit transaction' (Reg. § 226.2(a)(13))." *Petroff-Kline*, 557 F.3d at 296.

If, in fact, plaintiffs intended to refer to these portions of Regulation Z, then plaintiffs' TILA claims may be based upon 15 U.S.C. §§ 1638(a) ("Required disclosures by creditor") and 1640 ("Civil liability"). The Sixth Circuit has explained that "TILA governs disclosures required for 'closed ended' transactions (like automobile loans), dictating the substantive disclosures that must be made in 15 U.S.C. § 1638(a), the applicable form and timing requirements in 15 U.S.C. § 1638(b)(1), and the damages available for violations of those provisions in 15 U.S.C. § 1640(a)." *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 872 (6ᵗʰ Cir. 2003). The Court goes on to explain that "Section 1640 is a general 'civil liability' section in the TILA. In subsection (a) it provides for either actual and/or statutory damages for various TILA violations. Subsections (b) and (c) provide for (1) correction of errors, 15 U.S.C. § 1640(b), and (2) the treatment of unintentional violations and bona fide errors, 15 U.S.C. § 1640(c)." *Baker*, 349 F.3d at 870.

**ii.** Moving to the specifics of plaintiffs' TILA claim, plaintiffs allege that First Franklin "did not provide [them] with the TILA Disclosure Sheet at the closing of the loan, in violation of [Section] 226.22." Doc. Ent. 25 ¶ 14. This is likely a typographical error, because Section 226.22 concerns determination of the annual percentage rate. Perhaps plaintiffs meant to refer to the regulation that provides: "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).

If so, it is clear that plaintiff Reshelle Robinson was at least presented with such a statement on that date, because she signed it.¹² If plaintiffs intend to allege that they were not provided with

---

¹²Plaintiffs do not argue that the signature was coerced, nor do they dispute the validity of the signature(s) on the August 21, 2003 closing documents (Doc. Ent. 26-3, Doc. Ent. 26-5).

a *copy* of the TILA disclosure sheet until a date after August 21, 2003,[13] then defendant First Franklin had sixty (60) days to correct this defect pursuant to 15 U.S.C. § 1640(b). *See Baker*, 349 F.3d at 871 ("Defendant provided Plaintiffs with the copy of the RISC two weeks after the signing date, which was clearly within 60 days. Furthermore, there is no evidence in the record that Defendant received any written notice from Plaintiffs prior to the mailing of the RISC. Finally, Plaintiffs will not be required to pay an amount in excess of the charge actually disclosed since she was provided with a copy of the very document she signed.").

Plaintiffs also allege that First Franklin "failed to provide the plaintiff with clear disclosures in writing, in violation of [Section] 226.17." Doc. Ent. 25 ¶ 15. Attached to defendants' motion is a "Federal Truth-in-Lending Disclosure Statement," dated August 21, 2003 and signed by Reshelle Robinson. Doc. Ent. 26-5 at 1. Defendants argue that this disclosure "contains all the information required by the TILA and its implementing regulations at 12 C.F.R. 226.17 and 226.18." Defendants contend that "Plaintiffs' TILA claim cannot succeed as a matter of law, and the requested remedy of rescission is not available." Doc. Ent. 26 at 11.

It is true that "[i]nformation required by this subchapter shall be disclosed clearly and conspicuously, in accordance with regulations of the Board." *See* 15 U.S.C. § 1632(a); *see also* 12 C.F.R. 226.17(a)(2) ("Except for private education loan disclosures made in compliance with § 226.47, the terms "finance charge" and "annual percentage rate," when required to be disclosed under § 226.18 (d) and (e) together with a corresponding amount or percentage rate, shall be more

---

[13]As previously noted, in plaintiffs' now-stricken November 2, 2009 amended complaint, plaintiffs allege that, on or about September 10, 2003, they received "a copy of the closing documents that were supposedly signed by [James Robinson]." Doc. Ent. 35 at 2 ¶ 6.

conspicuous than any other disclosure, except the creditor's identity under § 226.18(a).").[14] However, plaintiffs' challenge to the adequacy of the disclosure statement is conclusory.

Furthermore, plaintiffs claim that First Franklin "failed to provide plaintiffs with a copy of the closing documents prior to the signing of same, disallowing them to be adequately informed of the contents of the closing documents." Doc. Ent. 25 ¶ 16. Perhaps this allegation is based upon 12 C.F.R. § 226.17(b), which concerns the time of disclosures and provides in part: "[t]he creditor shall make disclosures before consummation of the transaction. In certain residential mortgage transactions, special timing requirements are set forth in § 226.19(a). In certain variable-rate transactions, special timing requirements for variable-rate disclosures are set forth in § 226.19(b) and § 226.20(c)." *See also* 15 U.S.C. § 1638(b)(1) ("Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended.").

Here, I am persuaded by several cases. To begin, I am persuaded by the Sixth Circuit's 2003 decision in *Baker*, wherein the Court concluded that plaintiffs were not entitled to statutory damages for violations of 15 U.S.C. § 1638(b)(1). *Baker*, 349 F.3d at 866-869. In the same case, the Court concluded that 15 U.S.C. § 1640(b) ("Correction of errors") foreclosed plaintiffs' recovery of any damages in that case. *Baker*, 349 F.3d at 869-871.

Later, in *In re Ferrell*, 539 F.3d 1186 (9th Cir. 2008), the Ninth Circuit held that "statutory damages [under 15 U.S.C. § 1640(a)(2)] are [not] available for violations of 15 U.S.C. §§ 1632(a) and 1638(b)(1)." *Ferrell*, 539 F.3d at 1189, 1190. Specifically, the Court stated that "a consumer

---

[14]Furthermore, Section 226.18 has eighteen (18) subsections (Subsections (a)-(r)), which discuss information to be disclosed by the creditor as applicable, such as "creditor," "amount financed," "itemization of amount financed," "finance charge," "annual percentage rate," etc.

may not recover statutory damages under § 1640(a) for violations of § 1638(b)(1) and its corresponding regulations, 12 C.F.R. § 226.17(b)." *Ferrell*, 539 F.3d at 1191. Furthermore, the Court held that "a consumer may not recover statutory damages for violations of § 1632(a) and its corresponding regulations, 12 C.F.R. § 226.17(a)(2)." *Id.* at 1192. With respect to the Trustee's request for actual damages under 15 U.S.C. § 1640(a)(1), the Court referred to its decision in *In re Smith*, 289 F.3d 1155 (9th Cir. 2002). *Ferrell*, 539 at 1192. Therein, the Ninth Circuit held that "in order to receive actual damages for a TILA violation, i.e., 'an amount awarded to a complainant to compensate for a proven injury or loss,' Black's Law Dictionary 394 (7th ed.1999) (emphasis added), a borrower must establish detrimental reliance." *Smith*, 289 F.3d at 1157.

Furthermore, in its 2009 *Petroff-Kline* decision, the Sixth Circuit explained, "a debtor must prove actual damages to recover for a timing violation [*Baker*, 349 F.3d at 869], and actual damages require a showing of detrimental reliance [*In re Smith*, 289 F.3d at 1157], collecting cases, including our decision in *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000)). To establish detrimental reliance, the debtor must demonstrate that he or she would either have received a better interest rate for the loans elsewhere or would have elected not to take the loan had the required information been available [*Stout*, 228 F.3d at 718]." *Petroff-Kline*, 557 F.3d at 296-297.

Assuming plaintiffs' TILA claims are based upon 15 U.S.C. § 1638(b)(1) and/or 12 C.F.R. § 226.17(b), plaintiffs are not entitled to statutory damages under 15 U.S.C. § 1640(a)(2). Furthermore, with respect to their argument that they were not provided with a copy of closing documents in advance of the date on which the documents were signed, plaintiffs' claim that this resulted in "disallowing them to be adequately informed of the contents of the closing documents[,]" Doc. Ent. 25 ¶ 16, does not allege that plaintiffs detrimentally relied upon the mortgage documents.

Therefore, there is no allegation that plaintiffs are entitled to actual damages under 15 U.S.C. § 1640(a)(1).

Finally, in addition to the allegations made in plaintiffs' first cause of action (Count II), plaintiffs' prayer for relief seeks rescission of "the loan which is the subject matter of this litigation." Doc. Ent. 25 at 9 ¶ 1. It appears that this claim is based upon 15 U.S.C. § 1635, which concerns the "[r]ight of rescission as to certain transactions[,]" or 12 C.F.R. § 226.23, which concerns "Right of rescission." However, Section 1635 "does not apply to . . . a residential mortgage transaction as defined in section 1602(w)[15] of this title[,]" 15 U.S.C. § 1635(e)(1), and "[t]he right to rescind does not apply to . . . [a] residential mortgage transaction." 12 C.F.R. § 226.23(f)(1).

In sum, defendants Wells Fargo and Saxon are entitled to dismissal of the TILA claims against them.

### iii. Plaintiffs' third cause of action (Count IV) against defendant Orlans is based, at least in part, on alleged violations of the Fair Debt Collection Practices Act (FDCPA). Plaintiffs'
FDCPA claims appear to be based upon 15 U.S.C. § 1692c ("Communication in connection with debt collection"); 15 U.S.C. § 1692e ("False or misleading representations"), which provides in part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[;]" and 15 U.S.C. § 1692g ("Validation of debts").[16]

---

[15]"The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w).

[16]Plaintiffs specifically cite 15 U.S.C. § 1692g(a)(3), which provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice

Although the third cause of action (Count IV) is brought against defendant Orlans (¶¶ 30-42), it mentions Saxon (¶¶ 36). Plaintiffs allege that defendant Orlans violated 15 U.S.C. § 1692e as follows:

    a.    Plaintiffs received a letter from 'Saxon Mortgage Services, Inc.' dated February 22, 2006 - a corporation they have never heard of before.

    b.    That **<u>nowhere</u>** in the letter did Saxon identify itself as being the attorney in fact for Wells Fargo so the plaintiffs would know who the letter was from.

    c.    The contents of the letter contained information regarding an increase in their loan; however, it was riddled with nothing but percentages and was unable to be deciphered by the plaintiffs due to its complexity. The letter was extremely unclear.

    d.    That under the Least Sophisticated Consumer Standard, the language contained in this letter was very confusing and violates 15 USC 1692e.

Doc. Ent. 25 ¶ 36.[17] Among plaintiffs' requests for relief is a $2,000,000.00 award "in damages for the countless misrepresentations, and violations of the [FDCPA][.]" Doc. Ent. 25 at 10 ¶ 2.

Defendants argue that "any FDCPA claims premised on [this letter] must fail because [it] is not an attempt to collect a debt." Instead, defendants contend, "the letter is a typical loan-servicer-to-borrower communication providing the Robinsons with basic information about the interest rate on their mortgage loan and their monthly mortgage payments. It therefore cannot serve as the basis for a FDCPA claim, and Count IV must be dismissed as to Saxon." Doc. Ent. 26 at 12.

---

containing–. . . (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector[.]"

    Plaintiff also cites "15 USC 1692(b)G[,]" Doc. Ent. 25 ¶ 34, but may be referring to 15 U.S.C. § 1692g(b) ("Disputed debts").

[17]*See, i.e., Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509-510 (least sophisticated consumer standard), 512-513 (15 U.S.C. § 1692e) (6th Cir. 2007).

"Under the FDCPA, a debt collector does not include 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.'" *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed.Appx. 458, 459 (5th Cir. 2004) (quoting 15 U.S.C. § 1692a(6)(F)). In *Brumberger*, the Fifth Circuit concluded, "[b]y its plain terms the FDCPA does not apply to [defendant Sallie Mae Servicing Corp.] because [plaintiff] does not allege that he was in default at the time Sallie Mae began servicing his loans. Thus, [plaintiff] fails to show in his complaint that he is entitled to relief under the FDCPA, and the district court correctly dismissed his claim under Fed. R. Civ. P. 12(b)(6)." *Brumberger*, 84 Fed. Appx. at 459.

The Court should reach the same conclusion here. To be sure, the stationery of the February 22, 2006 letter to plaintiff Reshelle Robinson from Saxon Mortgage Services, Inc. identifies Saxon as a "debt collector." Doc. Ent. 26-6. However, the substance of the letter informs plaintiff Reshelle Robinson that Saxon had "recalculate[d] [her] monthly and interest rate in accordance with the terms of [her] mortgage note[,]" Doc. Ent. 26-6, and plaintiffs do not allege that they were in default at the time they received this letter. Therefore, the Court should dismiss plaintiffs' FDCPA claim against Saxon.

**c.** **Whether "as a matter of law, neither Wells Fargo nor Saxon can be liable for any conduct by any other entity that allegedly violated the TILA or the FDCPA[?]"**

Here, defendants Wells Fargo and Saxon challenge plaintiffs' first (Count II) and third (Count IV) causes of action. Doc. Ent. 26 at 12-13. Defendants claim that "neither Wells Fargo nor Saxon can be liable for damages under the TILA or the FDCPA because the alleged violative actions were undertaken by others."

**i.** First, defendants contend that the TILA requirements were complied with by the Federal

Truth-In-Lending Disclosure Statement dated August 21, 2003 and signed by Reshelle Robinson (Doc. Ent. 26-5), and they argue that "Plaintiffs have asserted no grounds to suggest that any alleged TILA discrepancies were apparent on the face of the disclosure statement." Also, citing 15 U.S.C. § 1641(f) ("Treatment of servicer"), defendants contend that Saxon has no liability under TILA. Doc. Ent. 26 at 12.

15 U.S.C. § 1641 of the TILA governs the liability of assignees. Subsection 15 U.S.C. § 1641(e) concerns the "[l]iability of [an] assignee for consumer credit transactions secured by real property[.]" That statute provides in part that "the violation for which such action or proceeding is brought [must be] apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee [must have been] voluntary." 15 U.S.C. § 1641(e)(1). Furthermore, "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1).

As defendants point out, "[a]ssignees of creditors can be liable under TILA, but only if the violation is apparent on the face of the disclosure statement (except where the assignment was involuntary)." *Greene v. Benefit Mortg. Corp.*, No. 08-12968, 2009 WL 56056, 8 (E.D. Mich. Jan. 8, 2009) (Roberts, J.) (citing 15 U.S.C. § 1641(f)). "TILA imposes liability only on purchasers and assignees of mortgages, so loan servicers cannot be liable under TILA." *Greene*, 2009 WL 56056 at 8 (citing 15 U.S.C. § 1641(f); *Wile v. Green Tree Servicing, LLC*, No. 04-2866, 2004 WL 2644390 (E.D. Pa. Nov. 22, 2004)).

Therefore, the Court should conclude that defendants Wells Fargo and Saxon cannot be held liable for the alleged TILA violations by First Franklin, because plaintiffs do not allege that a TILA

violation was apparent to Wells Fargo on the face of the disclosure statement (15 U.S.C. § 1641(e)) and because Saxon is a loan servicer (15 U.S.C. § 1641(f)).

ii.      Second, defendants contend that "Saxon cannot be held liable for violations of the FDCPA based on the alleged conduct of Orlans."  According to defendants, "Saxon was in the position of a loan servicer[18] and creditor in this instance, and is not liable for the actions of Orlans, despite Plaintiffs' unsupported allegation that Orlans was Saxon's 'designee'[.]" Doc. Ent. 26 at 13 (citing Doc. Ent. 25 ¶ 9).  Among the cases defendants cite in support of this statement is *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6ᵗʰ Cir. 1996):

> We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a "debt collector." Section 1692k imposes liability only on a " debt collector who fails to comply with [a] provision of this subchapter...." 15 U.S.C. § 1692k(a) (emphasis supplied). The plaintiffs would have us impose liability on non-debt collectors too. This we decline to do.

*Wadlington*, 76 F.3d at 108.[19]  Defendants contend that "the acts of Orlans do not implicate Wells Fargo or Saxon, and cannot lead to the imposition of liability against them."  Doc. Ent. 26 at 13.

Therefore, the Court should conclude that defendants Wells Fargo and Saxon cannot be held

---

[18]15 U.S.C. ¶ 1639a governs the "[d]uty of servicers of residential mortgages[.]"

[19]Here, defendants also rely upon *Havens-Tobias v. Eagle*, 127 F.Supp.2d 889, 898 (S.D. Ohio 2001) ("Defendant Schwan does not fall into the category of 'debt collector,' as provided by 15 U.S.C. § 1692a(6), but rather is the creditor of Plaintiffs, and, therefore, cannot be held liable, vicariously or otherwise, under the FDCPA."); *Frame v. Weltman, Weinberg & Reis*, No. 05-2049, 2006 WL 1348176, *2 (N.D. Ohio May 12, 2006) ("the FDCPA does not apply to creditors, their employees or officers, or their affiliates.  Further, a creditor cannot be held vicariously liable under the FDCPA for the alleged acts of debt collector it hires.") (citing *Havens-Tobias*, 127 F.Supp.2d at 898); and *Sprague v. Neil*, No. 05-1605, 2007 WL 3085604, *4 (M.D. Pa. Oct. 19, 2007) ("a creditor is not vicariously liable for the actions of its debt collector.").  Doc. Ent. 26 at 13.

liable for the alleged FDCPA violations by Orlans.

**d.**    **Whether "even if Wells Fargo is not a holder in due course - the only specific allegation against Wells Fargo of Plaintiffs' six counts - the absence of holder in due course status by itself is not a claim upon which any relief can be granted[?]"**

**i.**    Chapter 440 of the Michigan Compiled Laws comprises the Uniform Commercial Code. Within that Chapter, Article 3 governs "negotiable instruments," of which Part 3 governs "enforcement of instruments." *See* Mich. Comp. Laws §§ 440.3301-440.3312. Plaintiffs' second cause of action (Count III) specifically cites Mich. Comp. Laws § 440.3302 ("Holder in due course"):[20]

> Wells Fargo cannot be considered the holder in due course and, consequently, is a participant in predatory lending practices as it knew or should have known when the sale of the note from First Franklin Mortgage Loan and Trust occurred that it was in an overdue status, in violation of MCLA 440.3302.

Doc. Ent. 25 ¶ 22. Mich. Comp. Laws § 440.3302 ("Holder in due course") provides in part that "'holder in due course' means the holder of an instrument if both of the following apply:

> (a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity.

> (b) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an incurred default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 3306,[[21]] and (vi) without notice that any party has a defense or claim in

---

[20]As Section I.D.5 of my July 22, 2009 order stated, "[i]f plaintiffs intend to bring claims under Michigan's Uniform Commercial Code[], the appropriate statute(s) must be cited and the underlying actions must be described with specificity in the first amended complaint." Doc. Ent. 22 at 21.

[21]Mich. Comp. Laws § 440.3306 concerns "[c]laims to an instrument[.]"

recoupment described in section 3305(1).[22]

Mich. Comp. Laws §§ 440.3302(1) (internal footnote omitted).  In their prayer for relief, plaintiffs contend they are entitled to "satisfaction of [the] mortgage [under Mich. Comp. Laws ¶ 440.3311 ("Accord and satisfaction by use of instrument")]."  Doc. Ent. 25 at 10 ¶ 4.

**ii.**    Plaintiff's second cause of action (Count III) is titled "Allegations against Wells Fargo Bank and First Franklin Mortgage Loan."  Doc. Ent. 25 ¶¶ 17-29.  Specifically, plaintiffs allege that "Wells Fargo instituted foreclosure proceedings while plaintiffs were customers of Wells Fargo." Doc. Ent. 25 ¶ 20.  Citing *United States v. Hill*, 57 F.Supp. 934 (D. Ohio 1944),[23] plaintiffs argue that "Wells Fargo cannot be the holder in due course of the promissory note due to the fact that it purchased the note from the original lender, First Franklin Mortgage Loan and Trust in an overdue status."  Doc. Ent. 25 ¶ 21.  Citing Mich. Comp. Laws § 440.3302 ("Holder in due course"), plaintiffs assert that "Wells Fargo cannot be considered the holder in due course and, consequently, is a participant in predatory lending practices as it knew or should have known when the sale of the note from First Franklin Mortgage Loan and Trust occurred that it was in an overdue status, in violation of [Mich. Comp. Laws §] 440.3302."  Doc. Ent. 25 ¶ 22.  Furthermore, plaintiffs claim that Wells Fargo "is not in possession of the original note[,]" and further allege that the admission of "copies as evidence in order to prove nonperformance is insufficient to establish a default."  Doc. Ent. 25 ¶¶ 23-24.  Referring to Fed. R. Evid. 1003 ("Admissibility of Duplicates"), which provides

---

[22]Mich. Comp. Laws § 440.3305 concerns "[d]efenses and claims in recoupment[.]"

[23]*Hill*, 57 F.Supp. at 936 (interpreting Section 8157 of the General Code of Ohio, the court noted "[i]t would appear that the present plaintiff cannot be a holder in due course in its own right for two reasons. The first, there is no question that it took the note after it was over-due.").

that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original[,]" plaintiffs challenge "the authenticity of a copy of [the] promissory note[.]" Doc. Ent. 25 ¶ 25. Also, plaintiffs contend that defendants Wells Fargo and First Franklin have been unjustly enriched by the FDCPA violations which occurred during the foreclosure. Doc. Ent. 25 ¶ 26. Additionally, plaintiffs claim the assignment from First Franklin to Wells Fargo was invalid. Doc. Ent. 25 ¶ 28.

### iii. The Court should dismiss plaintiffs' second cause of action (Count III) based upon Michigan's Uniform Commercial Code to the extent it is brought against defendant Wells Fargo.

The gist of plaintiffs' argument in this cause of action is that defendant Wells Fargo was not entitled to foreclose on the property, because Wells Fargo was not a holder in due course as defined by Mich. Comp. Laws § 440.3302. Doc. Ent. 25 ¶¶ 21, 22, 27, 28. This is so, plaintiffs contend, because the assignment of the note took place when it was "in an overdue status." Doc. Ent. 25 ¶¶ 21-22; *see* Mich. Comp. Laws § 440.3302(1)(b)(iii)). Likewise, plaintiffs contend, defendant Wells Fargo engaged in "predatory lending practices," Doc. Ent. 25 ¶ 22, which may be an attempt to allege that defendant Wells Fargo did not take the instrument "in good faith[.]" Mich. Comp. Laws § 440.3302(1)(b)(ii). Also, plaintiffs claim that defendant Wells Fargo "was not in possession of the original note and assigned itself as Trustee for First Franklin[,]" and defendant First Franklin "did not assign [defendant Wells Fargo] to act as servicer of the mortgage[.]" Doc. Ent. 25 ¶¶ 23, 27, 28.[24]

---

[24]Within Count III, plaintiffs also claim that defendant Wells Fargo was unjustly enriched by FDCPA violations. Doc. Ent. 25 ¶ 26. However, "[t]he elements of unjust enrichment are '(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the

However, the Court should be persuaded by defendants' argument that "Count III does not state a claim for recovery." Doc. Ent. 26 at 13-15. In Michigan, Mich. Comp. Laws §§ 600.3201-600.3285 govern the foreclosure of mortgages by advertisement.[25] For example, Section 600.3204(1) sets forth circumstances under which a party may foreclose a mortgage by advertisement. As defendants point out, "nothing in section 600.3204 requires a named mortgagee to be a holder in due course of the note." *Hilmon v. Mortgage Electronic Registration Systems, Inc.*, No. 06-13055, 2007 WL 1218718, 3 (E.D. Mich. Apr. 23, 2007) (Duggan, J.) (referencing Mich. Comp. Laws § 600.3204).[26]

Also, the December 31, 2007 assignment assigned the August 21, 2003 mortgage and note. Doc. Ent. 26-4. As a holder of the note, defendant Wells Fargo was entitled to enforce the instrument. *See* Mich. Comp. Laws § 440.3301 ("Person entitled to enforce instrument");[27] *Kafele*

---

plaintiff because of the retention of the benefit by the defendant.'" *Cooper v. Dean*, No. 283244, 2010 WL 1223160, 6 (Mich. App. March 30, 2010) (quoting *Barber v. SMH (US)*, 202 Mich.App. 366, 375, 509 N.W.2d 791 (1993)). If plaintiffs intended to bring a state law cause of action against defendant Wells Fargo based upon unjust enrichment, they would need to make more than a conclusory statement.

[25]Section I.D.6 of my July 22, 2009 order provided that "plaintiffs may amend their complaint to add properly pleaded state law claims under Mich. Comp. Laws §§ 600.3216 and 600.3232. The defendant(s) against whom such claims are brought should be clear and the actions underlying the alleged violations should be described." Doc. Ent. 22 at 23.

[26]*See also Corgan*, No. 09-939, 2010 WL 2854421, *4 (W.D. Mich. July 20, 2010) ("MERS authority was not changed by any action which occurred after the time of the original mortgage. Plaintiffs clearly and expressly gave MERS the power to foreclose on the defaulted mortgage. That power was never taken away from MERS by any transfer of the mortgage or modification of some of the terms of the mortgage.").

[27]"'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 or 3418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." Mich. Comp.

*v. Javitch, Block, Eisen & Rathbone, LLP*, No. 03-638, 2004 WL 5178125 (S.D. Ohio Sept. 27, 2004);[28] and Mich. Comp. Laws § 440.3302 Uniform Commercial Code Comment ¶ 4 ("The primary importance of the concept of holder in due course is with respect to assertion of defenses or claims in recoupment (Section 3-305) and of claims to the instrument (Section 3-306)."). Therefore, the Court should agree with defendants that "the right to foreclose on the note is unaffected by the presence or absence of holder in due course status." Doc. Ent. 26 at 14.

Furthermore, in response to plaintiffs' allegations that defendant Wells Fargo does not have the original note (*see, i.e.*, Doc. Ent. 25 ¶¶ 23 & 27, as well as ¶¶ 34, 38 & 39]), defendants point out that "'[h]older', with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." Mich. Comp. Laws § 440.1201(20). Also, citing Fed. R. Evid. 1003 and Mich. R. Evid. 1003, defendants argue that "a duplicate is admissible to the same extent as an original, unless a 'genuine question' is raised as to the authenticity of the original." Plaintiffs' statement that "[f]or Wells Fargo to assert copies as evidence in order to prove nonperformance is insufficient to establish a default[,]" Doc. Ent. 25 at 5 ¶ 24, is inapplicable here, because this lawsuit does not involve a claim by Wells Fargo that the Robinsons are in breach of contract. Also, plaintiffs' challenge to "the authenticity of a copy of [the] promissory note in accordance with [Fed. R. Evid.] 1003[,]" does not have any teeth, especially when they also state that "[o]n or about

_____

Laws § 440.3301 (internal footnote omitted).

[28]*Kafele v. Javitch, Block, Eisen & Rathbone, LLP*, No. 03-638, 2004 WL 5178125, 10 N.6 (S.D. Ohio Sept. 27, 2004) ("under Ohio law, one does not have to be a holder in due course in order to enforce a note or other negotiable instrument.") (citing O.R.C. § 1303.31 ("Person entitled to enforce instrument")).

August 21, 2003, plaintiffs entered into a mortgage contract with First Franklin[.]" Doc. Ent. 25 ¶¶ 18, 25. Additionally, Mich. Comp. Laws § 440.3308 ("Proof of signatures and status as holder in due course"), states in part, "[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." Mich. Comp. Laws § 440.3308(1). Finally, citing Mich. Comp. Laws § 440.3309 ("Enforcement of lost, destroyed, or stolen instruments"),[29] defendants argue that "even if Wells Fargo did not physically possess the note, it would still likely be able to enforce the instrument." Doc. Ent. 26 at 15 n.10.

Finally, there is plaintiffs' claim that "First Franklin . . . did not assign Wells Fargo . . . to act as servicer of the mortgage; therefore this constituted an invalid assignment and Wells Fargo Bank cannot be considered a holder in due course." Doc. Ent. 25 ¶ 28. To the extent plaintiff is challenging Wells Fargo's ability to foreclose, plaintiffs do not explain why Wells Fargo needed to be assigned as the servicer of the mortgage. Furthermore, I note that the mortgage plaintiffs executed on August 21, 2003 identifies the "Lender" as First Franklin Financial Corporation and specifically states, "Lender is the mortgagee under this Security Instrument." Doc. Ent. 26-3 at 6. Pursuant to the mortgage's terms, "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Doc. Ent. 26-3 at 16 ¶ 20 ("Sale of Note; Change of Loan Servicer; Notice of Grievance."). The August 21,

---

[29]"A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." Mich. Comp. Laws § 440.3309(1).

2003 adjustable rate note specifically states:

> . . . In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the 'Security Instrument'), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. . . .

Doc. Ent. 26-3 at 3 ¶ 11 ("Uniform Secured Note").[30]

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

---

[30]Of course, if the Court agrees with my recommendation that defendants Wells Fargo and Saxon are entitled to dismissal of the TILA and FDCPA claims against them, the Court could also decline to exercise supplemental jurisdiction over this state law claim as it relates to them. *See* 28 U.S.C. § 1367(c)(3) ("the district court has dismissed all claims over which it has original jurisdiction[.]").

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE
Dated: 8/5/10


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on August 5, 2010.
>
>                          s/Eddrey Butts
>                          Case Manager